## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 04 C 1448 | DATE | 1/6/2005 |
| CASE TITLE | AW Acquisition Corp. vs. Southwestern Bell Mobile System | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
|---|---|---|
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry]  For the reasons set forth on the attached Memorandum Opinion and Order, this Court denies Cingular's motion to dismiss Count III and grants Cingular's motion to dismiss Counts II and V. Accordingly, Counts II and V are dismissed with prejudice. |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 0 7 2005 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | rbf | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| AW ACQUISITION CORP.,<br>an Illinois Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWESTERN BELL MOBILE<br>SYSTEMS, LLC, d/b/a CINGULAR<br>WIRELESS,<br><br>Defendant. | Case No. 04-C-1448<br><br>Judge Wayne R. Andersen<br>Magistrate Judge Geraldine Soat<br>Brown |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the Defendant Southwestern Bell Mobile Systems, LLC, d/b/a Cingular Wireless' Motion to Dismiss Counts II, III, and V of the Plaintiff's First Amended Complaint pursuant to FED. R. CIV. P. 9(b) and 12(b)(6). The jurisdiction of this Court is based upon 28 U.S.C. §1332 because the parties are citizens of different states and the amount in controversy exceeds the statutory minimum of $75,000, exclusive of interest and costs. For the following reasons, the Court grants the Defendant's motion in part and denies it in part.

## BACKGROUND

I.   **The Agreement**

On or about October 1, 1997, Areawide Cellular, Inc. and the Defendant's predecessor, Southwestern Bell Mobile Systems, Inc. d/b/a Cellular One (hereinafter the named Defendant, Southwestern Bell Mobile Systems, LLC d/b/a Cingular Wireless, and Southwestern Bell Mobile Systems, Inc. d/b/a Cellular One are collectively referred to as



"Cingular"), entered into an "Authorized Sale and Service Agreement" ("Agreement") whereby Areawide Cellular, Inc. became a licensed sales and service dealer of Cingular wireless services. The parties subsequently amended the Agreement on or around October 20, 1997, which altered the original payment structure. The parties operated under the Agreement until April 7, 2003, when Areawide Cellular, Inc. filed for bankruptcy protection. Thereafter, AW Acquisition Corp. purchased the assets of Areawide Cellular, Inc. (hereinafter Areawide Cellular, Inc. and AW Acquisition Corp. are collectively referred to as "Areawide").

Pursuant to the Agreement, Areawide became a nonexclusive, authorized agent of Cingular to sell Cingular services. In particular, Section 3 of the Agreement, which lays out the parameters of the parties' relationship, states in relevant part:

> [Cingular] hereby appoints [Areawide] as a nonexclusive, authorized agent in the Area to solicit and contract, on behalf of [Cingular], with Subscribers for the Authorized Services, subject to all of the terms and conditions hereof.
>
> During the term of this Agreement or thereafter, [Cingular] reserves the right without obligation or liability to [Areawide] to market the Authorized Services and CPE in the same geographical areas served by [Areawide], whether through [Cingular's] own representatives or through others, including, but not limited to other authorized agents, retailers, resellers and distributors.
>
> Upon enrollment of a particular Subscriber, that Subscriber shall become a customer of [Cingular] and [Cingular] shall offer and furnish such customer billing services as [Cingular] deems appropriate. [Cingular] shall be responsible to collect any charges for Authorized Services from Subscribers.

Furthermore, Section 1 of the Agreement sets forth the following pertinent definitions:

> <u>Authorized Services</u>. Those Services provided by [Cingular] that [Areawide] is authorized hereunder to sell on behalf of [Cingular], including CRS and any other Services set forth on Exhibit A hereto.

> Cellular Radio Services (CRS). Any and all service (including resale of said service) authorized by the Federal Communications Commissions . . .
>
> CPE. The customer premise equipment, including cellular terminal equipment, that a Subscriber needs for using CRS and other Authorized Services.
>
> Subscriber. A customer of an Authorized Service provided by [Cingular]. The CRS telephone number or other service access number assigned to a customer of [Cingular's] Authorized Services is deemed to be a separate Subscriber, regardless of how many CRS telephone numbers or service access numbers may be used by one customer.

Accordingly, Areawide agreed to act as Cingular's agent with respect to the sale of Authorized Services to Subscribers (this opinion hereinafter refers to the customers to whom Areawide sold the Cingular Authorized Services as "Areawide-originated Subscribers").

In consideration of Areawide's sales efforts, Cingular agreed to compensate Areawide under a series of tiered commissions. The amendment to the Agreement explicitly sets forth the structure of payment, but it shall suffice for the purposes of this opinion to note that Areawide was to receive set commissions based upon each activated Areawide-originated Subscriber and the type of Authorized Services provided to that subscriber. Furthermore, Areawide was to receive monthly residual commissions that were, generally speaking, equal to five percent of the total recurring base charges and local airtime charges billed by Cingular to Areawide-originated Subscribers.

## II. Allegations Regarding Cingular's Conduct

Areawide avers that on numerous occasions, Cingular directly contacted Areawide-originated Subscribers and encouraged those subscribers to end their relationship with Areawide. Furthermore, Areawide alleges that Cingular offered to ship

cellular telephones directly to Areawide-originated Subscribers in an effort to induce them to leave Areawide. According to the complaint, Cingular also attempted to establish a new relationship with the Areawide-originated Subscribers through its own internal channels of distribution.

In addition, the complaint claims that beginning in 1998, and continuing throughout the duration of the Agreement, four specific Cingular employees falsely represented that Cingular was selling equipment to Areawide "at cost" and Areawide had access to the same level of pricing and equipment discounts as Cingular's internal channels of distribution. Moreover, Areawide alleges these Cingular personnel falsely represented that residual commissions paid to Areawide would not be affected when Cingular sold a replacement phone directly to an Areawide-originated customer. As set forth in the complaint, the above-mentioned Cingular employees made these representations to Areawide either in person or over the telephone.

Areawide further asserts that the Cingular employees knew at the time that the representations were false and were intended to prevent Areawide from purchasing cellular equipment from other providers at a lower cost and to conceal the fact that Cingular was withholding residual commissions due to Areawide. Based upon the purportedly false representations, Areawide claims that it continued to purchase equipment from Cingular and refrained from purchasing equipment from other sources at lower rates. Moreover, Areawide asserts that Cingular's allegedly false representations induced it to refrain from pursuing potential claims for residual commissions. This reliance was reasonable and justified, according to Areawide, because Cingular was in a superior position of knowledge with respect to its own pricing and residual policies.

4

### III. The Counts

Cingular now asks this Court to dismiss Counts II, III, and V. The disputed counts are summarized as follows: Count II alleges that Cingular, by contacting Areawide-originated Subscribers, breached the duty of good faith and fair dealing that is implied in the parties' Agreement; Count III raises allegations of common law fraud; and Count V alleges tortious interference with a prospective economic advantage. At this point in the litigation, Cingular does not seek the dismissal of Count I (breach of contract for failure to pay commissions purportedly owed to Areawide); Count IV (violation of the Illinois Franchise Disclosure Act); or Count VI (defamation).

### DISCUSSION

When deciding a motion to dismiss, this Court accepts as true all "well-pleaded factual allegations and view[s] them, along with the reasonable inferences to be drawn from them, in the light most favorable to [the plaintiff]." *Cornfield v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1324 (7th Cir. 1993). Moreover, under the federal notice pleading standards, a complaint does not fail to state a claim simply because it does not set forth a complete and convincing picture of the purported wrongdoing. *American Nurses' Association v. State of Illinois*, 783 F.2d 716, 727 (7th Cir. 1986). At the same time, this Court is not bound by the legal characterizations that the plaintiff assigns to the alleged facts. *Republic Steel Corp. v. Pennsylvania Engineering Corp.*, 785 F.2d 174, 183 (7th Cir. 1986); *Prudential Insurance Co. of America v. Sipula*, 776 F.2d 157, 159 (7th Cir. 1985). Furthermore, this Court will grant a defendant's motion to dismiss if it "appears beyond doubt that the plaintiff can prove no set of facts in support

of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

I.      **Count II: Breach of Contract (Implied Covenant of Good Faith and Fair Dealing)**

In Count II, Areawide asserts that Cingular breached the implied covenant of good faith and fair dealing when Cingular directly contacted Areawide-originated Subscribers and encouraged those Subscribers to forge a new relationship with Cingular through its internal channels of distribution. Cingular responds to this accusation by arguing that, while there is a duty of good faith and fair dealing implied by law in every contract, that duty does not create an independent cause of action. According to Cingular, the implied duty of good faith and fair dealing is an aid in the construction of contracts, and therefore any breach of the implied duty must be appurtenant to some other explicit contract provision.

It is true that Illinois law recognizes a covenant of good faith and fair dealing implied by law in every contract. *See Martindell v. Lake Shore National Bank*, 154 N.E.2d 683, 690 (Ill. 1958); *see also Prudential Insurance Co. of America v. Van Matre*, 511 N.E.2d 740, 746 (Ill. App. 1987)("a covenant of good faith and fair dealing is implied in every contract as a matter of law, absent an express disavowel"). Illinois law, however, expressly rejects a broad independent cause of action in tort for the breach of that implied contractual duty, and limits such a claim to the very narrow circumstances present in cases when an insurer has a "duty to settle" lawsuits brought against a insurance policyholder. *See Cramer v. Insurance Exchange Agency*, 675 N.E.2d 897, 898-904 (Ill. 1996)(the Illinois Supreme Court recognized an independent cause of action

6

in tort for breach of a contractual implied duty of good faith and fair dealing when insurer assumes defense of policyholder who has been sued); *see also Voyles v. Sandia Mortgage Corp.*, 751 N.E.2d 1126-30 (Ill. 2001)(the Illinois Supreme Court expressly refused to extend the independent cause of action for the breach of an implied duty of good faith and fair dealing beyond the "duty to settle" line of cases recognized in *Cramer*).

In this case, Areawide characterizes Count II as a claim for "breach of contract - soliciting customers." Careful analysis, however, reveals that the claim is simply an attempt to bring an independent cause of action for the breach of a contractual implied duty of good faith and fair dealing. Specifically, Areawide alleges that "[b]y soliciting and encouraging Areawide's customers to leave Areawide and, instead, continue its relationship directly with Cingular, Cingular breached the implied duty of good faith and fair dealing present in the Agreement." Areawide does not point to any specific provision of the Agreement that Cingular allegedly breached by failing to adhere to the duty of good faith and fair dealing. In other words, Areawide's claim simply alleges that Cingular violated an independent duty of good faith and fair dealing, which Illinois law does not recognize except in "duty to settle" cases. Moreover, Areawide has sufficient recourse under the terms of the Agreement. In fact, Areawide has brought a claim for breach of contract in Count I, which avers that Cingular breached the Agreement by failing to pay commissions allegedly owed to Areawide.

For these reasons, Cingular's motion to dismiss Count II is granted, and Count II is dismissed with prejudice.

## II. Count III: Common Law Fraud

In Count III, Areawide brings a cause of action for fraudulent misrepresentation, which in Illinois requires the following elements: "(1) a false statement of a material fact; (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *People ex rel. Peters v. Murphy-Knight*, 618 N.E.2d 459, 463 (Ill. App. 1993)(citing *Soules v. General Motors Corp.*, 79 Ill.2d 282, 286 (1980)). Furthermore, when a claim of fraud is brought before a federal court, the Federal Rules of Civil Procedure require that the plaintiff plead "the circumstances constituting the fraud . . . with particularity." FED. R. CIV. P. 9(b). The Seventh Circuit has interpreted this federal requirement to mean that the plaintiff must allege the "who, what, where, and when" of the purported fraud. *See Ackerman v. Northwestern Mutual Life Insurance Company*, 172 F.3d 467, 469-70 (7th Cir. 1999); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Under this framework, the Court concludes that the complaint sufficiently sets forth a claim for fraudulent misrepresentation.

Specifically, Areawide alleges that beginning in 1998, and continuing throughout the entire relationship, four specific Cingular employees represented to Areawide, either in person or over the telephone, that Cingular was selling equipment to Areawide "at cost" and that Areawide had access to the same level of pricing and equipment discounts as Cingular's internal channels of distribution. Furthermore, Areawide claims that the same Cingular employees represented to Areawide that residual commissions would not be affected when Cingular sold a replacement phone to at least one Areawide-originated

8

Subscriber. Areawide asserts that the named Cingular employees knew that these representations were false, but nevertheless persisted in making them in order to induce Areawide to not purchase equipment from other vendors at an allegedly lower cost. Furthermore, Areawide claims that it reasonably relied upon these purportedly false statements by not purchasing equipment from other vendors, and that their reliance was justified because Cingular maintained a superior position of knowledge with respect to its own costs and the prices it charges to its internal channels of distribution.

Taking these allegations in a light most favorable to the plaintiff, the Court concludes that Areawide has plead its claim for fraudulent misrepresentation with sufficient particularity to satisfy the heightened pleading standards set forth in FED. R. CIV. P. 9(b). Furthermore, Areawide has sufficiently alleged the elements for common law fraud. Accordingly, Cingular's motion to dismiss Count III is denied.

III. **Count V: Tortious Interference with Prospective Economic Advantage**

In Count V, Areawide brings a cause of action for tortious interference with a prospective economic advantage. In order to bring a claim for tortious interference with a prospective economic advantage, Areawide must allege: 1) that it had a reasonable expectation of entering into a valid business relationship; 2) Cingular had knowledge of the plaintiff's expectancy; 3) purposeful or intentional interference on the part of Cingular that prevented Areawide's legitimate expectancy from ripening into a valid business relationship; and 4) damages to Areawide resulting from the interference. *See Cromeens, Holloman, Sibert, Incorporated v. AB Volvo*, 349 F.3d 376, 398 (7th Cir. 2003)(citing *Soderlund Bros., Inc. v. Carrier Corp.*, 663 N.E.2d 1, 7-8 (Ill. App. 1995)). However, in instances when the relationship of the parties is defined by contract, if the

contract shows "unambiguously on its face that the relief prayed for is not merited, dismissal is both justified and appropriate." *Palada v. General Dynamics Corp.*, 47 F.3d 872, 874-76 (7th Cir. 1995).

In this case, Areawide's complaint states that at all relevant times, "Areawide had a reasonable expectation of maintaining a continuing business relationship with its customers for whom it originated cellular telephone services, including deriving a continued economic advantage." Furthermore, Areawide alleges that when Cingular directly contacted the Areawide-originated Subscribers, Cingular interfered with this prospective business relationship. Pursuant to this interference, Areawide was harmed because "it lost residual income that it would otherwise be paid [by Cingular] in an amount to be determined." Even assuming these facts to be true, as this Court must on a motion to dismiss, Areawide fails to state a claim for tortious interference with a prospective business or economic advantage for two reasons.

First, the Agreement explicitly states that Areawide-originated Subscribers are customers of Cingular. In particular, the Agreement states that Areawide is a "nonexclusive, authorized agent" who was appointed to "solicit and contract, on behalf of [Cingular]" subscribers for the cellular services provided by Cingular. Furthermore, the Agreement says that upon enrollment of an Areawide-originated Subscriber, "that Subscriber shall become a customer of [Cingular] . . . ." Moreover, Cingular explicitly reserved the right "without obligation or liability to [Areawide] to market the Authorized Services and CPE in the same geographical areas served by [Areawide], whether through [Cingular's] own representatives or through others . . . ." Importantly, the Agreement defines "CPE" as the "customer premises equipment, including cellular terminal

10

equipment, that a Subscriber needs for using CRS and other Authorized Services."
Given these express terms of the Agreement, Cingular had the right to contact its own
customers to market its own services and cellular terminal equipment. Therefore, the
express terms of the Agreement unambiguously show that the relief prayed for is not
merited.

Second, Areawide's claim for tortious interference with a prospective economic
advantage fails because it is simply a claim for breach of the Agreement wrapped in a
shroud of tortious interference. In *Calderon v. Southwestern Bell Mobile Systems, LLC*,
2003 WL 22340175 (N.D.Ill.), Judge Grady addressed a tortious interference claim
almost factually identical to Areawide's claim, and dismissed the claim because it was
"simply the same breach of contract claim for failure to pay commissions that [was
previously asserted in the complaint], dressed up as a tortious interference claim."
*Calderon*, 2003 WL 22340175 at *7. In this case, Cingular makes the same argument -
that is, Areawide's claim for tortious interference is nothing more than an attempt to re-
assert that Cingular breached the Agreement. This Court finds Judge Grady's reasoning
persuasive.

Areawide alleges that when Cingular contacted Areawide-originated Subscribers
directly, they interfered with a reasonable prospective economic advantage. This
interference purportedly resulted in harm to Areawide because it did not receive the
residual commissions that Cingular owed them pursuant to the Agreement. In other
words, Areawide's tortious interference claim is nothing more than an attempt to re-
assert that Cingular breached the Agreement by failing to pay commissions - a claim
already brought in Count I.

Accordingly, Cingular's motion to dismiss Count V is granted, and Count V is dismissed with prejudice.

IV. **Punitive Damages**

Cingular separately moved to dismiss Areawide's request for punitive damages with respect to Counts III and V based upon the premise that the underlying counts are invalid. Because this Court dismisses Count V, it follows that the plaintiff cannot seek punitive damages with respect to that claim. This Court, however, denies Cingular's motion to dismiss Count III; accordingly, at this point the Court also denies Cingular's motion to dismiss Areawide's request for punitive damages with respect to Count III.

## CONCLUSION

For the foregoing reasons, this Court denies Cingular's motion to dismiss Count III and grants Cingular's motion to dismiss Counts II and V. Accordingly, Counts II and V are dismissed with prejudice.

IT IS SO ORDERED.

Wayne R. Andersen
United States District Judge

Dated: January 6, 2005